And thank you, Ms. Vasquez, for your representation as well. And last but not least today, we have the case of Willis v. Royal Caribbean. Good morning. All right, Mr. Perez. Good morning. Good morning, Your Honors. May it please the Court, my name is Alex Perez. I represent the plaintiff below and appellant here, Judith Willis. We're here today on an appeal of the District Court's order granting summary judgment against the cruise line passenger. Now, this case presents two issues on appeal, constructive notice and causation. And the appellant wins both issues, entitling a reversal of the District Court's order. Now, on the notice issue, the plaintiff presented two prior similar incidents of passengers becoming injured during Royal Caribbean's mandatory mustard drill, just like her. And those two prior incidents were sufficient for the District Court to answer what this court in Cogburn v. Carnival framed as the relevant question, whether the prior incidents allowed the cruise operator to foresee the plaintiff's incident. And based on the James Bennett's incident in which a passenger was rushed during the mustard drill, just like Ms. Willis, and based on the Mary Daniels prior incident in which a passenger was not given accommodations, just like Ms. Willis, the District Court could have answered the Cogburn question, yes. The cruise operator could foresee that if they did not, if they rushed passengers or did not give them accommodations during the mandatory mustard drill, a passenger could become injured. And the District Court should not have excluded that prior incident evidence. Let me ask you a more basic question. You're jumping right into the notice, whether or not the cruise line had notice of the dangerous condition. But how is being rushed a dangerous condition? Well, there's record evidence that, you know, the District Court found that the cruise operator needed to provide reasonable care under the circumstances. And here there was record evidence from the plaintiff's liability expert that when a passenger says, I can't do something or has limitations, everything stops and the crew member needs to give accommodations to the passenger. Because, yes, it's a drill. Yes, it should be done with as if it was an emergency, but it's still what's reasonable under the circumstances. And to rush someone like here when Ms. Willis says, I can't, I'm old, I can't climb. And the crew member is rushing her on two occasions saying, get in there. She's not giving credence to the plaintiffs, the passengers, express limitations. How is that? I mean, and I think this is not meant to be a negative question. It's a helpful question. How is that a premises liability issue? That seems like it's a negligence claim against the crew member for just being negligent in addressing the issue. I mean, it doesn't seem like you would need any notice at all for that. That's correct. That's why we have count one and count two are direct claims against the cruise line for the way in which they do their muster drill, their operation of the vessel. And we had a count three vicarious liability for the actions of the crew member, which did not meet notice. And I think we make that point clear in our brief. And even if even if you don't find that there was the prior incidents, we have a vicarious liability claim for which the notice is not needed. Right. So on the so just the way the rubric works out. Right. So you have to you would have to address the causation issue regardless whether you're talking about the first count or the third count. Right. That's correct. Okay. On the causation issue. What do you do with all of these cases from Florida and from our court that say that when there's a causal link? And this is just a quote from a case when the causal link between alleged injuries and the incident issue is not readily apparent to a layperson expert medical testimony as to medical causation is required. I mean, what do you do with that? So we disclosed a treating doctor who had been seeing the plaintiff before seven years before the incident and after. And the district court found that that witness, that expert, Dr. Joseph Kozel, was a disclosed federal rule. Twenty six. A to C expert. And under that rule, he did not need a robust report stating his complete opinions. Rule 26. A to C requires a summary of facts and opinions to which that expert is to testify. I mean, it seems like the issue is he said he did say I've been seeing her for all these years. She never complained of this until she had the incident on the cruise ship. But he did not go so far as to say that that her pain was caused by the incident on the cruise ship. And then we've got the MRI, which shows disc disease, which. So then you've got this sort of question of, OK, well, was her pain and injury caused solely by the disc disease? Was it caused solely by the fall or was it caused by some combination? And that's where it seems like there might be a problem with causation. Yeah. So a couple of points there. Number one, I think Dr. Kozel's summary disclosure did explain the facts and opinions to which she would testify. So a couple of opinions there. The first fact was he was treating her seven years before. So you have a clear before and after doctor. And the law is that a treating doctor can testify on causation if those opinions are based on observations and treatment of the plaintiff. So we have that there in the first sentence. The first opinion is she had never complained of neck pain before. And that's an opinion because he's making he's making a judgment based on his treatment and her prior fact. I think it's an opinion because he's making a judgment based on her prior complaints and saying based on my medical expertise. And he said, I've been treating her for multiple comorbid conditions, but none relate to neck pain. So I think that's the first opinion. The second opinion is she has been complaining of neck pain since the fall. That's the second opinion, because he's interpreting her symptoms. And I think the third opinion, as you pointed out, is the cervical MRI, which he says, look, I've looked at objective medical evidence, an MRI. And my interpretation of that evidence is positive for a neck injury. You say this disease, but the MRI, which is in the record, shows radiations. So he's saying it's a disc injury. And I think based based on the aggregate, taking those opinions and facts together, the reasonable inference there is plaintiff can meet her burden of free trial based on having Dr. Kozel testify as an expert. Now, what the district court did is he weighed the evidence. I think he improperly weighed the evidence and says, well, that's correlation, not causation. No, he acknowledged that an inference could be made that Dr. And even further, he says, look, how is that a reasonable inference? And he has said there was no she reported no pain in the past. She's now reporting pain. And I have an MRI that shows some trauma to the neck. That link hasn't been made in that very brief paragraph. I agree with you that a treating physician doesn't have to give a robust report. But where the dots don't seem to be connected in this information. I think it is a reasonable inference because the only event that Dr. Kozel points to in his disclosure is the cruise fall. He doesn't say any other fall or anything else. Again, he says for seven years before, there have been no neck pains. The only thing he points to in his disclosure is the cruise fall. So I think it's reasonable to infer from the aggregate of his disclosure is that the cruise fall is the cause of injury. He certainly has used it as a temporal marker, but he has not attributed the injury, the disease, the trauma to the fall. Well, two points there. I mean, if you were to say it's ambiguous, the law is clear in this in the circuit that the plaintiff gets ambiguities resolved in her favor. You view the evidence in the light most favorable to her. I think the facts there support the inference. And the second point is, if you look at the committee notes to the Federal Rule 26, it says for Federal Rule 26A to C experts, courts should be cautious not to require undue detail from treating doctors because they're not as responsive to counsel as paid experts. So I think Dr. Kozel gives in his own words what he's expecting to testify to, pointing to the cruise ship fall as the only possible cause. The only cause identified in his disclosure is the cruise ship fall to explain the post-incident MRI, which, again, she didn't have any MRIs before. She didn't need any because she didn't have any neck complaints before. So that supports that it's reasonable to infer that he would testify to causation at trial. Can I ask a question just about the practice of this? So I read the defendant's summary judgment motion and I read your response. And their motion says something along the lines of there is no evidence, then there's certainly no expert testimony that the fall caused any injuries. And then your response relies on the expert disclosure or the treating physician's disclosure. If this doctor is willing to testify that the fall caused her injury, why didn't I mean, is there something that prohibits you from getting an affidavit from the doctor that says that or from? I mean, I just I don't understand why. You're right. Your arguments about our disclosure didn't have to be super detailed. OK, but now their argument is that there's no evidence. So why didn't that put the burden on you to say, no, we do have evidence. Here's the evidence. And then fight about whether you disclosed it sufficiently later. That's a different question. Yeah, because I think the answer to your question is that the federal rule 56 just requires us to point to record materials. And that is an expert disclosure required under the federal rules. Federal Rule 26. A2C says disclose your experts. That is an expert disclosure. That is record evidence that the district court can and should have considered at the summary judgment stage. Sell a text. The Supreme Court case says you don't need to depose your own witness to survive summary judgment. Yeah, you definitely don't need to depose your own witness. But often you have to go get an affidavit from them. Right. I mean, I think the main point of the Celtics case was you don't need affidavits or declaration. You just need to point to record evidence. And in the cell text case, the issue there was that the defendant points interrogatory answers to establish an absence of fact. It was an affidavit. I think the cell text case is clear. You don't need to let me just I mean, maybe maybe I just don't understand summary judgment. Well, but I mean, so if a defendant so this is there's just no discovery in a case like the plaintiffs and the defendant, there's lazy. They just won't discover anything. But the defendant shows up and files a summary judgment motion and says there's you know, we don't think they're going to have any evidence and there's no evidence in the record of causation or of injury. You know, we don't think the plaintiff was injured. Could you just point to your disclosure of the plaintiff's testimony and just say like we've disclosed the plaintiff as a witness and we expect the plaintiff to testify about her injuries in response to that? Or would you have to go get an affidavit from the plaintiff that actually says like, here are my injuries? Well, I think the first issue with your hypothetical is that Clark versus Coates, this court's 11th Circuit opinion says it's not enough just for a defendant to say you're not going to meet your burden of proof at trial. So there's two avenues for summary judgment. The defendant can negate with their own evidence not done here or point to record material evidence on the record. So the defendant moving her summary judgment has a burden to at least point to something, show something. Only when that burden is met does the burden shift to the plaintiff. And to your point, if the plaintiff just says they're going to testify, if it's a medical issue, well, they're going to need an expert evidence. But if it's a factual issue, the plaintiff's sworn testimony would be enough for an affidavit. The rules make it clear. Yeah, certainly. Okay. I think your response on that was just that the defendant wouldn't admit its burden to the affidavit. That's correct. All right. Thank you, Mr. Perez. And you've reserved five minutes for rebuttal. We'll hear from Mr. Craven. Good morning. May it please the Court, Andrew Craven for Royal Caribbean. I want to touch on one topic that was just addressed, and it has to do with the standard for summary judgment and the case law that's been relied on in this matter. There does seem to be a fundamental misunderstanding of what the defendant's burden was here at the motion for summary judgment. However, the case law and authority relied on, the Clark case and the Silatex case, do not say that the defendant has to come forward with something or that we have a burden to prove something. We had a burden to prove the absence of something, which we did in this case. There is no record evidence that's, to this moment, been put before either of the courts that the claimed accident on this cruise ship caused Mrs. Willis' injury. As we sit here today, there's no record evidence that's been pointed to that says that fall caused this injury. That is a fatal flaw, and all the defendant was required to do, which it did do, was show there's an absence of evidence on one of the four pillars required under a tort claim, duty, breach, causation, and damages. The plaintiff cannot establish causation, and that is a fatal flaw for all three counts of the accident. Mixing up the law a little bit, and I don't mean to, the vicarious liability claim, count three, and the other two claims do have some different applications here. The vicarious liability claim under the USCO case, arguably, the plaintiff does not have to establish that the defendant had notice of the dangerous condition. But Judge's more order has nothing to do with notice on the vicarious liability claim. He pushes that aside and says you still have to prove each of the four elements of the tort, one of those being causation. That was not done. There is zero record evidence of it. Therefore, that claim fails. The other two claims, in addition to having that problem, also have the notice of it. There were three – under general maritime law, in addition to the four elements of the tort, under general maritime law and negligence claim, outside of vicarious liability claim, the plaintiff has to establish that we had notice of the dangerous condition. Many ways to do that, actual notice, different types of constructive notice if a puddle had existed for a long period of time based on its size or it was dirty. Here, we only have one avenue for that, the three prior claims. None of those claims have anything to do with a plaintiff who said, I saw where I was walking. My view was not obstructed. I was aware I was walking downstairs. The lighting was good. I could see perfectly fine. I fell, and the reason I fell is because I felt rushed or I felt pressured by a crew member. And all of those incidents were on different cruise ships as well. Is that correct? They are, but I would like to concede that arguably, if there was a fall on a different cruise ship owned by the same defendant, to be clear, I would not argue that if a person with an identical fact pattern is this, I fell over only because I felt rushed. I had no problem seeing. Arguably, that would be substantially similar. The three here, none of them have those facts in common. The Bennett case, it gets misconstrued, but if you actually read it, he wasn't at the muster drill. He was going to the muster drill. But he did say he felt rushed. I mean, he did say he didn't maybe use exact, I think he said it in response to a question. I can tell you what he said. I mean, that's fine. You can if you want to. I want to focus on the causation, but feel free. He said, I was on my way to the muster station. I was paying attention to the steward. And at the bottom of the questionnaire, there's no testimony. This is a questionnaire, an accident report. They stated, what do you think could have prevented the accident? And he said, no rushing, which Judge Moore said that has no application to a crew member making him feel rushed during the muster drill. I mean, it seems to me like it's pretty similar. But that's my view. Let me ask you something about the causation. Here's my concern about the causation. You know, I think that there are certain things that may possibly be lacking with what the plaintiff has shown. But on the other hand, you know, if she never had back pain before, how could she show that her back pain here and her neck pain here is caused by the fall that she took when she wouldn't have had an MRI previously because she never had reason to have an MRI. In other words, there's nothing to compare the MRI to. So how how would she show causation other than for her doctor to say, look, I've been seeing her for all these years and she's never had a problem. And, you know, now all of a sudden she has this problem. And the only thing that seems to have changed is she had this fall. I agree. But Dr. Kozel would have had to say the change was caused by the fall. But how could he know that? I mean, I guess he could do maybe could do a rule out kind of diagnosis. I don't know. I mean, how would he be able to how would he be able to make that analysis, make that determination that it was caused by the fall, especially when he goes and he looks at the MRI? And there's no way to know when you look at an MRI, whether the herniation happened before or after the fall. I mean, she may never have complained about it, but maybe it was there previously and it just got aggravated. I mean, who who knows? Which is why expert disclosure and opinion is required. Lay people couldn't know a medical expert can look at an MRI. And I need to point out that I think there was a reference to trauma being revealed in the MRI. The MRI revealed this disease, not trauma, meaning how was it there? Opposing counsel says it did not say anything about this disease that it said a herniation. Which is a herniation is not necessarily this disease. Right. But I believe the MRI says this disease and a herniation can cause caused by trauma or the wear and tear of life. I agree. And that's why I'm asking you how he would prove how she would prove causation there. The only way through a medical expert who come, which is required to come in and say this injury caused this medical condition. Well, they would they wouldn't have to say that it caused it. Right. They would say that it's like a possible cause. And then they've examined other possible causes and they think it's like a likely cause or the most likely cause or to a reasonable degree of medical certainty is the thing that people say. You know, that's not required, but they say that. Right. Or more likely than not. And also, we're kind of going deeper into the weeds on 26A, 2B and C. But also, I did consider other other possible causes and I ruled those out. My opinion is it's more likely than not is another one that this fall caused this medical condition. What about what about. So there's this little element of Florida law that we've seemed to have incorporated into maritime law. It's a mystery to me how that happened, but whatever that says, there are certain kinds of things that you don't need expert testimony for. And one of the things that the plaintiff and if I'm wrong, but I thought one of the things the plaintiff testified to in her own deposition was that she felt that she hurt her neck on the stairs. Couldn't she at least sue for the pain and suffering of hurting her neck on the stairs? She could sue, but not for the pain in her neck, because if you read the Rivera case and the other cases are cited, they put forward the proposition that non readily identifiable injuries require expert testimony. Yeah, but I guess here's the thing. Like so and that's where I'm the non readily identifiable. That's where I'm having a difficult time. I mean, if I slip and fall and I'm like, man, I really busted it like my my tailbone hurt and I hurt for like two days after that. And I mean, I don't have any like medical diagnosis. There's no doctor who's diagnosed me with anything. Can I sue for the pain and suffering of hurting myself slipping on your negligently ill maintained floor? You would not survive the causation element once it got to the summary. What would the expert testify to that falling on your your butt can hurt your tailbone if there was a permanent injury of any kind? If I'm not suing for a permanent injury, I'm just saying like that hurt. I don't think you would even meet the standard for filing the lawsuit. And that's OK. Well, maybe it hurt me really, really bad. And I don't know. I can't explain because some of the case law discusses the non non readily identifiable versus identifiable. I believe one of them is a broken arm where you actually see the horrific injury that that a lay person can look at that and say, OK, that's a broken arm. But beyond that, when you start getting into pain, complaints of chronic pain, the Rivera case, I believe, is also a neck injury that it requires a expert medical opinion. So, I mean, just once again, like what would the doctor testify to if I so I fall, I hurt myself, I'm in pain for like a week because I hurt myself. And then what would the doctor testify to in my trial that you fell? I can give you a diagnosis. So let's say a fracture or a bruise or a sprain of the tailbone. He would either say a bruise would be obvious, right? I mean, a bruise would be something that you would need an expert to testify to. Right. Yes and no. On the non readily identifiable standard, yes, I do think you can have bruises that are not necessarily visible that doctors can opine exists deeper in the tissue. It's not I don't know if that's relevant to your question, but it does differentiate whether or not you need an expert or not. OK, well, I thank you for your time and I hope we ask that you affirm the district court's granting a summary judgment. Thank you, Mr. Craven. Mr. Perez, you have five minutes. One of the questions, I believe it was Justice Rosenbaum asked the question, how would an MRI show a herniation? And the MRI report is in the record at forty six nine. It does document herniations. The word herniation is used at C4, C5, C5, C6. So how would a doctor like Kozel prove that? His analysis of the film, number one. Number two in the record is plaintiff's deposition testimony where she explained that after the accident, Dr. Kozel, the same doctor prescribed her a particular drug, gabapentin, that treats nerve issues. And again, the MRI notes that there's pressure on a nerve. So the doctor could testify. I never had the need to prescribe her this nerve drug before. It was only after the fall, based on my observations of treatment of the MRI that showed pressure on the nerve. So the doctor could testify with facts to support his causation opinion at trial. Again, you could look at an MRI and some experts can ascertain whether it's a fresh herniation or an old herniation, whether it's age related or if it's because of an injury. An expert can do that based on a review of the MRI. And again, Dr. Kozel in his report stated that he reviewed the MRI. Isn't that a problem for your client if a doctor can ascertain whether it's a new herniation or an older herniation? And Dr. Kozel didn't make that statement as to whether it was a new herniation. I mean, why isn't that a problem for your client? I think the two facts, again, his disclosure is there is no need for, not a need, but there was no radiological interpretation before, never needed it. That's the inference there. It was only until after this group's fall where she complains of neck pain do you see at two levels of herniation. And that's more than just... That may be true, but that doesn't necessarily say that those are new herniations, right? I mean, how do we, how does that get us to these are new herniations? I think the answer there is he's saying it's a new injury. She never complained of this before. And when you have, when the MRI is showing pressure on a nerve, that's showing that it's a new injury. And he's saying she never had these complaints before. It was only since, since the crew's fall, she's been complaining of pain. Supporting, I think, viewing this evidence, his disclosure, is the fall caused what you see in the MRI, the disc injury. I mean, he's surely saying that she has new pain, but he hasn't connected the pain to the fall. And that's where I come back. If you're to say it's ambiguous, the law of this circuit is clear. You have to resolve those ambiguities in the plaintiff's favor. What if we don't say it's ambiguous? We say it's not in there. You would lose if we say it's not in there. The causal link, right? Well, I think it is in there. But if we say it's not, you lose on causation, correct? If we say it's not in the treating position's notes, if we don't see a causal link, is that fatal to you? I don't think so because, again, and this is the point Justice Brasher was pointing out, the plaintiff can still testify that it's within a jury's common understanding. If you fall, you have pain. And I think that was your point. I'm trying to answer your question. Even if you take out Dr. Kozel and say, I don't see a clear-cut opinion, and I think you have to view that evidence in the light most favorable to the plaintiff anyways, but even if I just had the plaintiff at trial, I think, based on the law that we cited in the brief, is if I fall, I can talk to the jury about I can't move my arms, I can't drive, I have an impairment in my quality of life based on this fall. And I don't think I will lose the case. I think I still survive on the vicarious liability count, again, even without the notice. Unless your honors have any further questions, I'm happy to address them. Thank you, counsel. Thank you very much. All right. Thank you both. We will be in recess until tomorrow.